UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JARMAAL MCLEOD,

                Petitioner,

      -against-

UNITED STATES OF AMERICA,

                Respondent.

---

12 CR 354 (LAP)
17 CV 8212 (LAP)

ORDER

Loretta A. Preska, Senior United States District Judge:

    Before the Court is Petitioner Jarmaal McLeod's motion,
pursuant to 28 U.S.C. § 2255, to vacate his narcotics conspiracy
and distribution convictions due to ineffective assistance of
counsel. (See Motion to Vacate ["Mot."], dated October 23, 2017
[dkt. no. 1], as modified on September 21, 2018 [dkt. no. 29],
as further modified on April 15, 2019 [dkt. No. 44].)[1] Also
before the Court is Petitioner's April 18, 2019 motion for
production of documents and appointment of counsel. (Dkt. no.
46.) The Government responded to both motions in a memorandum
of law filed June 10, 2019. (Dkt. no. 50.) The Court assumes
the parties' familiarity with the underlying facts and

---

[1] All citations to docket entries herein refer to 17-cv-8212.

procedural history.  For the reasons set forth below, the
motions are denied.

I.    Legal Standards

     a. The Habeas Statute

     Under 28 U.S.C. § 2255, a federal prisoner "may move the
court which imposed the sentence to vacate, set aside, or
correct the sentence" on the grounds, inter alia, that the
"sentence was imposed in violation of the Constitution or laws
of the United States . . . or is otherwise subject to collateral
attack."  28 U.S.C. § 2255(a).  On a § 2255 motion, the
defendant bears the burden of proof by a preponderance of the
evidence.  See Triana v. United States, 205 F.3d 36, 40 (2d Cir.
2000).

     b. Ineffective Assistance of Counsel

     In order to prevail on a claim of ineffective assistance of
counsel, Petitioner must (1) illustrate that his counsel's
conduct fell below the "objective standard of reasonableness,"
and (2) "affirmatively prove prejudice."  Rodriguez v. United
States, No. 10 CIV. 5259 (KTD), 2011 WL 4406339, at *2 (S.D.N.Y.
Sept. 22, 2011) (quoting Strickland v. Washington, 466 U.S. 668,
693-94 (1984)).  "[A] Court must indulge a strong presumption
that counsel's conduct falls within the wide range of reasonable
professional assistance."  Strickland, 466 U.S. at 689. Prejudice
is established if Petitioner demonstrates that "there is a

2

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  The question is not whether the attorney in question adhered to the best practices or customs.  Harrington v. Richter, 562 U.S. 86, 105 (2011).  Rather, the relevant query is whether the "attorney's representation amounted to incompetence under the prevailing professional norms."  Id. (internal quotation marks omitted).

In the context of plea offers, "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."  Missouri v. Frye, 566 U.S. 134, 145 (2012).  In order to show Strickland prejudice with respect to counsel's handling of a proposed plea, a defendant "must demonstrate a reasonable probability that but for counsel's deficient performance, he would have pled guilty instead of going to trial."  Raysor v. United States, 647 F.3d 491, 495 (2d Cir. 2011).  While a defendant can offer his own statement in support of that showing, "in order for the statement to be sufficiently credible to justify a full hearing, it must be accompanied by some 'objective evidence,' such as a significant sentencing disparity, that supports an inference that the petitioner would have accepted the proposed plea offer if properly advised." Id.

(quoting Puglisi v. United States, 586 F.3d 209, 215-16 (2d Cir. 2009)).

III. Discussion

A.   Ineffective Assistance With Respect to the Plea

Mr. McLeod first argues that his lawyer ineffectively advised him with respect to a plea he claims the Government offered.

According to Mr. McLeod, the Government offered Mr. McLeod a guidelines rage of 63 to 78 months, "with the possibility of a career offender designation requiring a guideline range of 151-188 months" if he pleaded guilty to conspiracy to distribute controlled substances.  (Pet. at 5-6.)  McLeod claims that his counsel never informed him that he could receive a sentence as low as 63 to 78 months if he pleaded guilty; never informed him he could face a sentence of 360 months to life if he proceeded to trial and was found guilty; and repeatedly told him that if he pleaded guilty he would receive the "bottom end" of the career offender guideline, that is, 151 months imprisonment. (Id. at 6-7.)  In fact, McLeod was sentenced to 150 months imprisonment.  (Dkt. no. 49 in 12-cr-354.)

The Government contests McLeod's version of the facts. According to the Government, "while the parties engaged in preliminary plea discussions, . . . those conversation never translated into a proposed plea bargain."  (Opp. at 11.)  In

4

support of this, the Government cites the affidavit of Douglas
Bloom, one of the Assistant United States Attorneys involved in
Mr. McLeod's case, who avers that "at no stage of the
prosecution of this case during [his] involvement did the
Government make a formal plea offer to Jarmaal McLeod."  (Ex. 1
at 2.)

     The Court need not resolve the factual dispute over whether
the Government provided Mr. McLeod with a formal plea offer.
Even assuming that an offer was made, Mr. McLeod's own
statements make clear that under the terms of the agreement, he
would not have accepted the offer.

     At the January 3, 2013 arraignment on the superseding
indictment in this case, Mr. McLeod stated told the Court that
"the only plea I got, from April 19, was the career offender 151
months to 181 months for allegedly buying 20 grams of whatever
they are trying to say I bought."  (Ex. C at 8.)  The Court
therefore rejects Mr. McLeod's assertion some six years later
that he was offered a plea with a guidelines range of 63 to 78
months.  The record is clear that Mr. McLeod was aware of a
potential plea agreement but wished to exercise his right to
proceed to trial.  (See Ex. C at 8 ("I was informed that he was
going to supersede me on November 15.  It wasn't before that.
. . .  I already been wanting to go to trial.  I been telling my
lawyer I want to go to trial. . . .  It was two court dates back

5

when my lawyer asked me would I be willing to take a possession
with intent to distribute.  I told him no, I'm not taking no
possession with intent to distribute.").)

### B.    Ineffective Assistance at Trial

Mr. McLeod next asserts that his lawyer was ineffective in
defending him at trial.  Among other things, he claims (1) that
his case hinged on whether or not he has "H or Ace on [a] phone
call" and that "there is a phone call [recording] which could
have changed the outcome of the case if it was obtained," but
counsel failed to introduce it at trial and Petitioner did not
receive a copy until after trial; and (2) that counsel failed to
obtain a voice specialist to opine on this recording.  (Pet. at
17-19.)

Mr. McLeod's assertions, without more, cannot support a
finding of ineffective assistance.  See United States v. Davis,
159 F.3d 1348 (2d Cir. 1998) (Table) (rejecting ineffective
assistance claim that relied, among other things, on counsel's
failure to identify useful evidence, when the defendant "d[id]
not identify particular documents or materials, or indicate how
they could have been used at trial"); Baran v. United States,
160 F. Supp. 3d 591, 598 (S.D.N.Y. 2016) (rejecting claim of
ineffectiveness premised on a failure to conduct sufficient
investigation, where defendant "put[] forward no evidence to
suggest that Defense Counsel's decisions were unreasonable or

that a more thorough investigation . . . would have raised a reasonable probability that the verdict would have been different"); see also Eze v. Senkowski, 321 F.3d 110, 129 (2d Cir. 2003) ("A defense counsel's decision not to call a particular witness usually falls under the realm of trial strategy that [courts] are reluctant to disturb," so long as counsel's choice is "grounded in some strategy that advances the client's interests."); Tyson v. Keane, 159 F.3d 732, 738 (2d Cir. 1998) ("Voice identification . . . does not depend on specialized expertise.  Juries may listen to an audiotape of a voice and determine who is speaking even though the voice has been authenticated only by a lay witness rather than an expert.").  Mr. McLeod's remaining arguments are similarly without merit.

IV.  Conclusion

For the reasons set out above, Petitioner's motion to vacate his sentence pursuant to 28 U.S.C. § 2255 (dkt. nos. 1, 29, 44) is DENIED.  Petitioner's motion for discovery and appointment of counsel (dkt. no. 49) is also DENIED.  The Clerk of the Court is directed to mark these motions as closed.

The Clerk of the Court is directed to mail a copy of this order to Mr. McLeod.

**SO ORDERED.**

Dated:   New York, New York
         March 29, 2022

_Loretta A. Presley_
LORETTA A. PRESKA
Senior United States District Judge